## SKIDMORE, OWINGS AND MERRILL *v.* CONNECTICUT GENERAL LIFE INSURANCE COMPANY

SUPERIOR COURT      HARTFORD COUNTY      FILE NO. 130968

Memorandum filed May 6, 1963

*Cooney & Scully,* of Hartford, for the plaintiff.

*Robinson, Robinson & Cole,* of Hartford, for the defendant.

KLAU, J. This is an action in which the plaintiff seeks a declaratory judgment determining whether the period of limitation has expired so as to bar an arbitration proceeding instituted by the defendant on July 31, 1962, against the plaintiff. By way of relief, in the event it is determined that the Statute of Limitations has expired, the plaintiff seeks a temporary and permanent injunction restraining the defendant from proceeding with such arbitration. After a hearing held August 31, 1962, on an order to show cause why a temporary injunction should not be issued, *Meyers, J.,* denied the defendant's motion that the plaintiff be directed to proceed with arbitration and issued a temporary injunction restraining the defendant from proceeding with the arbitration which it had demanded of the plaintiff until further order of the court. To avoid unnecessary delay, the parties have entered into a stipulation that the arbitration proceedings heretofore instituted should, however, proceed to the point where a panel of arbitrators should be selected under the rules of the American Arbitration Association, but provided that no hearing in said arbitration proceedings should be had until judgment in this action was rendered.

There is no great dispute with respect to the facts as far as the present action is concerned. The plaintiff is a widely known partnership firm engaged in the practice of architecture and on May 5, 1953, entered into a written contract in this state with the defendant insurance company whereby the plain-

tiff agreed to render architectural and supervisory services in connection with the design and construction of the new home office building of the defendant in the town of Bloomfield. Under the agreement, the plaintiff was given responsibility for each phase of the planning and construction, was to prepare all drawings and specifications for the building, and was given the duty of complete supervision over the course of the "Work." One of the plaintiff's specific undertakings was to furnish the "services of structural, heating, ventilating, air-conditioning, plumbing and electrical engineers." The subject matter of the controversy here relates to the alleged breach of contract with respect to the heating and air-conditioning system.

In February, 1955, the plans for the heating, ventilating, and air-conditioning (HVAC) system were "frozen" for the purposes of securing bids thereof. The purpose of freezing the HVAC plans was so that bids might be taken from potential subcontractors for the HVAC system on a uniform basis, without the confusion which would result from the necessity of making adjustments in the various bids to take account of design changes constantly being made. On March 9, 1955, the plaintiff sent a copy of the HVAC design and specifications, in their then form, to the defendant. No approval of these plans from a technical engineering point of view was asked and none was given, and plaintiff conceded that defendant was not qualified so to approve. The specifications, however, were accepted by the defendant prior to obtaining bids. Bids were secured from subcontractors, and in May, 1955, the general contractor engaged by the defendant entered into a subcontract for the HVAC system, and thereafter the general contractor undertook and completed the installation of the HVAC system, as designed by the plaintiff, in accordance with the

design and specifications furnished by the plaintiff as aforesaid. While no changes were made after March 9, 1955, in the basic specifications for the pipe which subsequently corroded and thereby precipitated the underlying dispute between the parties, many changes were made in the plans of the HVAC system and in other aspects of the building subsequent to this date. In fact, changes thereafter made in the HVAC system resulted in an additional cost of $500,000.

In the early months of 1957, the defendant occupied said building as a home office and has continuously occupied it since that time. The defendant first became aware of the defective air-conditioning system shortly before June 10, 1960. On that date, the defendant notified the plaintiff that there was evidence of serious pipe corrosion in the heating and air-conditioning system which used, as a cooling agent, well water from ten wells constructed on the premises of the defendant. On that date and thereafter, meetings were held to determine the cause of this corrosion and the remedial steps which should be taken. A representative of the plaintiff attended several of these meetings, and plaintiff received copies of the minutes of all of them.

The actual design of the HVAC system had been undertaken by well-known mechanical engineers, Syska and Hennessey, selected by the plaintiff and approved by the defendant. This was in accordance with the terms of the agreement entered into between the plaintiff and the defendant. The pipes specified and actually installed for the heating and air-conditioning system were copper coils, and the corrosive action thereof was in all probability due to the chemical content of the water used in connection with the heating and air-conditioning system and obtained from the wells driven for this purpose.

The plaintiff and the firm of Syska and Hennessey, the plaintiff's subcontractor who actually designed the HVAC system, both obviously entirely familiar with the building, were retained by the defendant to devise a means of altering the HVAC system in light of the corrosion problem. Changes in the system were subsequently made.

On July 31, 1962, defendant demanded, pursuant to the arbitration clause contained in the contract of May 5, 1953, that the plaintiff arbitrate the question whether the corrosion in the HVAC system was due to a breach by plaintiff of its duties under this contract.

The contract for architectural services referred to above contained the following clause with respect to arbitration: "L. Arbitration. All questions in dispute under this Agreement shall, at the choice of either party, be submitted in accordance with the procedures then obtaining of the American Arbitration Association." The claim or relief sought and the defendant's demand for arbitration are as follows: "Claimant alleges breach of contract on the part of Skidmore, Owings & Merrill in failing to use reasonable care and skill in discharging its duties as architect of the Home Office Building of Connecticut General, located in Bloomfield, Connecticut, pursuant to a contract between the parties executed at Hartford, Connecticut, on May 5, 1953, to wit: As a result of faulty design and construction the heating and air-conditioning system has become badly corroded and its useful life substantially shortened, requiring claimant to expend large sums in repairs and permanently reducing the value and usefulness of its building."

The plaintiff refused to arbitrate and instituted the present action seeking the declaratory judgment referred to above. During the course of the

trial, the plaintiff agreed and the parties stipulated that no claim of laches was or could be raised with respect to the timeliness of the defendant's demand on July 31, 1962, for arbitration.

The plaintiff claims that the arbitration proceeding is barred by the Statute of Limitations because the cause of action, if the defendant has any, which is the basis for the arbitration proceedings arose in 1955 when the plaintiff submitted its specifications for the HVAC system and the defendant approved them. Since the pipe installed was that specified, the wrong, the plaintiff claims, occurred at the time the specifications were submitted, even though the damage flowing from the allegedly defective pipe was not discovered by the defendant until June, 1960. The plaintiff claims that such a cause of action, being essentially one based on negligence, is barred by § 52-584 of the General Statutes, which bars any action to recover damages for injury to property unless it is brought within one year from the date when the injury was first sustained or not more than three years from the date of the act or omission complained of. Under such circumstances, the cause of action would have been barred, the plaintiff claims, not later than 1958.

The plaintiff further claims that if § 52-584, supra, is not applicable for the reason that the defendant's cause of action is one based upon a breach of contract, nevertheless the defendant is barred by the Statute of Limitations set forth in § 52-576 of the General Statutes, which bars any action on a contract in writing not under seal (as is the present contract) and not brought within six years next after the right of action accrues. The plaintiff asserts that even under this Statute of Limitations the defendant's right of action is barred, since more than six years elapsed between March, 1955, the

date the plaintiff submitted the HVAC plans and specifications to the defendant, and July 31, 1962, the date on which the defendant made its demand for arbitration; this demand the plaintiff construes as constituting the commencement of an "action" by the defendant.

It is the defendant's claim that the Statute of Limitations is not applicable to bar the arbitration proceeding which it demanded on July 31, 1962, pursuant to the arbitration clause in its agreement with the plaintiff, for the following reasons: (1) The arbitration proceeding which it invoked by its demand does not constitute the bringing of an action within the meaning of the phrase as used in the Statute of Limitations above cited, and therefore the Statute of Limitations cannot be invoked to enjoin the arbitration; (2) even if the demand for arbitration constitutes the bringing of an action within the meaning of the phrase as used in such Statute of Limitations, the question of its applicability as a bar is to be determined in the arbitration proceeding by the arbitrators and not by the court so as to preclude the arbitrators from considering the matter; (3) and finally, even if the defendant's position with respect to the first two assertions is not upheld, the Statute of Limitations applicable to the case is § 52-576 of the General Statutes, which permits suit within six years of the breach of contract, and, further, the breach in this case was a continuing one from the time the plaintiff designed the HVAC system and submitted specifications therefor until 1957, when its supervisory duties ended with the completion of the building. The defendant claims that the plaintiff's breach of contract involved not merely the defective design submitted by the plaintiff in 1955 but the plaintiff's failure to supervise properly the construction of the building. Since demand for arbitra-

tion was made in July, 1962, and thus within six years from the most recent date of the plaintiff's breach in 1957, the defendant asserts that there is no bar, insofar as the Statute of Limitations is concerned, to the arbitration demanded.

The first question then to be determined is whether the demand for arbitration made by the defendant on July 31, 1962, is the bringing of an action within the bar of any applicable Statute of Limitations.

An arbitration proceeding is not the bringing of an action within the meaning of the phrase as used in the Statute of Limitations cited above. "[T]he word 'action' has no precise meaning and the scope of proceedings which will be included within the term as used in the statutes depends upon the nature and purpose of the particular statute in question." *Carbone* v. *Zoning Board of Appeals,* 126 Conn. 602, 605. "In a general sense the word 'action' means the lawful demand of one's right in a court of justice; and in this sense it may be said to include any proceeding in such a court for the purpose of obtaining such redress as the law provides." *Waterbury Blank Book Mfg. Co.* v. *Hurlburt,* 73 Conn. 715, 717. "Most of our statutes of limitation in their essential features were enacted long before our present methods of pleading and practice were adopted, and were designed to apply to the various actions known to the common law; and when, after the adoption of our Practice Act, their phraseology was changed, there was no intent to alter their scope in any way." *Hickey* v. *Slattery,* 103 Conn. 716, 719.

"In *Hickey* v. *Slattery,* . . . [supra], we pointed out that our ancient statutes of limitation were originally designed to apply to the various actions known to the common law, and the adoption of the Practice Act of 1879 abolishing set forms for in-

stituting actions did not alter their scope. See *Baker* v. *Lee,* 52 Conn. 145, 146. In that statement we used the word 'actions' not with reference to mere forms but to denote the congeries of elements which constituted causes of action within the established requirements of the common law." *Anderson* v. *Bridgeport,* 134 Conn. 260, 265; see *Schempp* v. *Beardsley,* 83 Conn. 34, 37; *Silberman* v. *McLaughlin,* 129 Conn. 273, 278; *Luckenbach Steamship Co.* v. *United States,* 312 F.2d 545 (2d Cir.). In *Temple* v. *Riverland Co.,* 228 S.W. 605 (Tex. Civ. App. 1921), the court decided that arbitration did not constitute a "suit or action" within the meaning of a statute which provided that no foreign corporation doing business in Texas without a permit could maintain any suit or action. In *Son Shipping Co.* v. *De Fosee & Tanghe,* 199 F.2d 687 (2d Cir. 1952), where the plaintiff sought to enjoin the arbitration of a maritime dispute on the ground, among others, that the applicable Statute of Limitations contained in the Carriage of Goods by Sea Act, 49 Stat. 1207, 46 U.S.C. §§ 1300–1315, had expired, the court stated (p. 689) : "It is true that the demand was not made within the one year limitation upon suits, contained in § 1303 (6) of the above Act, but there is, nevertheless, no time bar because arbitration is not within the term 'suit' as used in that statute. Instead, it is the performance of a contract providing for the resolution of controversy without suit."

Arbitration is not a common-law action, and the institution of arbitration proceedings is not the bringing of an action under any of our statutes of limitation. "Arbitration is an arrangement for taking and abiding by the judgment of selected persons in some disputed matter, instead of carrying it to the established tribunals of justice; and is intended to avoid the formalities, the delay, the expense and vexation of ordinary litigation. When

the submission is made a rule of court, the arbitrators are not officers of the court, but are the appointees of the parties, as in cases where there is no rule of court." *In re Curtis-Castle Arbitration,* 64 Conn. 501, 511 (1894); see 5 Am. Jur. 2d 522, Arbitration and Award, § 6.

While it is perfectly true that a court proceeding may arise which is related to an arbitration, as when a party to the arbitration applies to the court for confirmation of an award of the arbitrators, nevertheless, there is no reason on this account to confuse the arbitration with legal proceedings which may follow. Any suit to enforce an arbitration award is based not upon the original cause of action giving rise to the dispute between the parties but upon the award of the arbitrators as such. Sturges, Commercial Arbitrations and Awards, p. 676; see *Dewart* v. *Northeastern Gas Transmission Co.,* 139 Conn. 512, 514 (1953).

"The parties to an arbitration set up their own tribunal and rules of procedure. *In re Curtis-Castle Arbitration,* 64 Conn. 501, 511 . . . . In various situations delineated in chapter . . . [909] of the General Statutes they may seek the assistance of the court. Applications for such assistance are special proceedings not controlled by the formal requirements for service of process. *Fortune* v. *Killebrew,* 86 Tex. 172, 177 . . . ; see *Temple* v. *Riverland Co.,* (Tex. Civ. App.) 228 S.W. 605, 608. Most of the cases cited by the defendants assume that the plaintiffs' motion was an ordinary civil action to be commenced as such. The plaintiffs' motion may come within such broad definitions of 'action' as are to be found in *Waterbury Blank Book Mfg. Co.* v. *Hurlburt,* 73 Conn. 715, 717, . . . and *Carbone* v. *Zoning Board of Appeals,* 126 Conn. 602, 605 . . . ." *Boltuch* v. *Rainaud,* 137 Conn. 298, 301; see *McCaf-*

*frey* v. *United Aircraft Corporation,* 147 Conn. 139, 141.

Thus, although various stages of the arbitration proceedings have been construed as "actions" for certain purposes; see *Boltuch* v. *Rainaud, supra; Yale & Towne Mfg. Co.* v. *International Assn. of Machinists,* 15 Conn. Sup. 118; *Textile Workers Union* v. *Uncas Printing & Finishing Co.,* 20 Conn. Sup. 91; there appears to be no sound reason, in the absence of an express statutory provision, for including an arbitration proceeding within the type of actions intended to be encompassed within the bar of the Statute of Limitations. Counsel have cited no case in any jurisdiction wherein an arbitration proceeding has been held to constitute an "action" within the meaning of the phrase as used in any statute of limitations except cases decided in New York. In that jurisdiction, however, there is an express statutory provision that an arbitration proceeding shall constitute an "action" to be included within the statute of limitations. N.Y. Civ. Prac. Act §§ 10, 1459; see *Reconstruction Finance Corporation* v. *Harrisons & Crosfield, Ltd.,* 204 F.2d 366 (2d Cir. 1953), cert. denied, 346 U.S. 854.

Even if it be assumed by way of argument that the commencement of an arbitration proceeding is the bringing of an action within the meaning of the phrase as used in the Statute of Limitations, the application of the statute is to be determined in the arbitration proceedings by the arbitrators and not by the court. The arbitration clause in paragraph L of the contract between the parties hereinbefore set forth, is unrestricted in its scope. It leaves all questions in dispute, under the contract, at the choice of either party to arbitration under the procedures then obtaining of the American Arbitration

Association. There is no great public policy involved which should lead the court to restrain the defendant from demanding arbitration, as was the case in *Wilko* v. *Swan*, 346 U.S. 427. The plaintiffs have no vested right in the bar of the statute. *Gilbert* v. *Selleck*, 93 Conn. 412, 418. There are but a few reported cases on the subject. See note, 37 A.L.R.2d 1125, "Laches or statute of limitations as bar to arbitration under agreement."

In *Reconstruction Finance Corporation* v. *Harrisons & Crosfield, Ltd.*, supra, the court, in a majority opinion, held the underlying dispute between the parties concerned the failure of the plaintiff to procure insurance on certain rubber shipments, as it was obligated to do by contract. The defendant suffered a large financial loss when certain of these shipments were destroyed in transit by enemy action in 1942. On September 14, 1951, the defendant served upon the plaintiff a demand for arbitration, pursuant to a relevant arbitration clause. The plaintiff sought to enjoin the arbitration on the ground that more than six years (the period of the applicable Statute of Limitations under New York law) had elapsed since the breach of contract occurred. The plaintiff pointed out, properly, that by statutory definition in New York an "action" encompasses an arbitration. See N.Y. Civ. Prac. Act §§ 10, 1459. The court acknowledged that it was faced with a case of first impression. It distinguished between the problem of applying the Statute of Limitations to the alleged breach of contract of the plaintiff which occurred in 1942 and the alleged breach of the arbitration clause itself in refusing to arbitrate when demand was made therefor under the contract. As to this alleged wrong, the court stated (p. 369): "The 'cause of action' for breach of the obligation to arbitrate did not 'accrue' until defendant recently asked Recon-

struction Finance Corporation to arbitrate the 'controversy,' and Reconstruction Finance Corporation then refused to comply." The Statute of Limitations had obviously not run on this "cause of action." The court felt that this was the only statute of limitations question which it had power to consider. As to the effect of the Statute of Limitations on the merits of the controversy, the court said (p. 369): "The effect of the limitations statute on the asserted obligations to obtain insurance will be determined by the arbitrators." This approach is consistent with Connecticut Law. *United Electrical Radio & Machine Workers* v. *Union Mfg. Co.,* 145 Conn. 285, 288; *Chase Brass & Copper Co.* v. *Chase Brass & Copper Workers Union,* 139 Conn. 591, 595; *Liggett* v. *Torrington Building Co.,* 114 Conn. 425, 432; see 5 Am. Jur. 2d 564, Arbitration and Award, § 58.

The opinion of the court in *Reconstruction Finance Corporation* v. *Harrisons & Crosfield, Ltd.,* supra, has been followed in *Mitchell* v. *Alfred Hofmann, Inc.,* 48 N.J. Super. 396, (1958). In *Petition of Ropner Shipping Co.,* 118 F. Sup. 919 (S.D.N.Y. 1954), the court held that the issue of accord and satisfaction is, like that of the Statute of Limitations, for the arbitrators to decide, and the court stated (p. 920): "[A]part from equity doctrines such as laches, which on a motion to compel arbitration the Court sitting as a court of equity must take into account, all other issues of law and fact are for determination by the arbitrators." See also *Batter Building Materials Co.* v. *Kirschner,* 142 Conn. 1, 10; *Wauregan Mills, Inc.* v. *Textile Workers Union,* 21 Conn. Sup. 134, 138; 5 Am. Jur. 2d 532, Arbitration and Award, § 15.

The plaintiff cites *Hammerstein* v. *Shubert,* 127 N.Y.S.2d 249 (1953), in support of its claim that the application of the Statute of Limitations is to be

determined by the court and not by the arbitrators. In that case, the court held that where an agreement containing provisions for arbitration was made in 1938 and no action to enforce arbitration brought until the pending action, the six-year Statute of Limitations controlled, the obligation of the parties being contractual, and that the only matters arbitrable under the agreement were those that transpired in the six years immediately prior to the bringing of the litigation. The plaintiff also cites the dissent of Judge Clark in *Reconstruction Finance Corporation* v. *Harrisons & Crosfield, Ltd.*, supra, as well as the cases of *Matter of Plastic Molded Arts Corporation (A & H Doll Mfg. Corporation)*, 23 Misc. 2d 839 (1960), and *Matter of New York Cent. R. Co.* v. *Erie R. Co.*, 30 Misc. 2d 362 (1961). It is first of all to be pointed out that Judge Clark did not in his dissent lay down the rule that the Statute of Limitations was to be determined by the court but merely felt that laches had been established by the plaintiff. In the present case, as already recited, the parties have stipulated that no laches on the part of the defendant is claimed or involved. The other New York cases cited above followed the enactment in 1959 of § 1458-a of the New York Civil Practice Act, which provided in part as follows: "A motion to compel arbitration shall be denied, and a motion to stay arbitration granted, if at the time of the giving of notice of intention to arbitrate, or of the making of a demand for arbitration, the claim sought to be arbitrated would be barred by an existing statute of limitations if such claim were asserted in an action in a court of this state." This statute is not so clearly declaratory of the common law as was asserted by *Steuer, J.*, in *Matter of Plastic Molded Arts Corporation (A & H Doll Mfg. Corporation)*, supra.

In a recent case, *Matter of Cohen (Cohen)*, 17 App. Div. 2d 279, 282 (1962), "Specifically, . . . [§ 1458-a of the New York Civil Practice Act] was enacted to eliminate the confusion theretofore existing in the decisions as to whether a proceeding in court could be invoked to enforce the defense of the Statute of Limitations or whether the applicability of the defense was in the sole discretion of the arbitrators. (N.Y. Legis. Annual, 1959, pp. 12, 13, 27.)" The court held that the statute, although applicable to a contract to arbitrate future disputes, would not be applicable to an arbitration of an existing dispute, and stated (p. 284): "Generally speaking, in the absence of some express restriction or reservation in connection with a written submission, the parties thereto are presumed to have agreed 'that everything, both as to law and fact, which is necessary to the ultimate decision, is included in the authority of the arbitrator.' (See 6 C.J.S., Arbitration and Award, § 48.) There being no expressed intent to the contrary, a submission is deemed to embrace all issues of fact and law with reference to the controversies submitted. . . . All such issues, which are not expressly or by plain implication excluded from their domain, are to be determined by the arbitrators. Thus, in a broad and unrestricted submission of a controversy to arbitration, the issue of whether or not the Statute of Limitations is a bar to a claim involved, including the question of alleged waiver of the statute, is generally within the competence of the arbitrators."

The reasoning of the court in the *Cohen* case, supra, in the absence of a statute such as § 1458-a of the New York Civil Practice Act, is applicable as well to an agreement to arbitrate future disputes as is the situation in the instant case. It is worthy to note that the New York Court of Appeals in the case of *Matter of Lipman (Haeuser Shellac*

*Co.)*, 289 N.Y. 76, 80, stated: "While it must ever be borne in mind that a court has no power to grant a motion to compel arbitration unless the subject-matter is comprised within the agreement to arbitrate made by the parties, yet when once an agreement to arbitrate has been made, such an agreement must be considered in the light of the broad language used in the above arbitration statute. (Civ. Prac. Act, § 1450.) This language seems to imply that all acts of the parties subsequent to the making of the contract which raise issues of fact or law, lie exclusively within the jurisdiction of the arbitrators. It is to be noted that, contrary to the contention of appellant, the statute only requires the contract to have been made and does not require that it shall continue to be in existence. The language of the agreement to arbitrate of course, must be sufficiently broad so as to permit of the application of the general principle that all issues subsequent to the making of the contract are not for the court but for the arbitrators." See *Matter of Behrens (Feuerring)*, 296 N.Y. 172, 177. To the same effect is the case of *Batter Building Materials Co.* v. *Kirschner,* 142 Conn. 1.

Thus, in the absence of express statutory direction, the determination that the Statute of Limitations is a bar to the arbitration proceedings is one which cannot be made by the court but must be left to the arbitrators.

Finally, even if it be conceded that the bar of the Statute of Limitations is an issue for the court to determine, yet in the present case it must be concluded that the arbitration proceeding demanded is not barred by any applicable Statute of Limitations, because the breach in this case continued until 1957.

In the demand for arbitration set forth in plaintiff's exhibit E, the defendant alleged a breach of

contract on the part of the plaintiff in failing to use reasonable care and skill in discharging its duties as architect of the defendant's home office building. Such an allegation includes a claim of failure to supervise and inspect properly the progress of the work. An architect's duty to direct and inspect work carries with it the duty to condemn work which he considers unfit. See 6 C.J.S. 315, Architects, § 17. The duty to supervise construction includes the right to condemn improper materials. *Avent* v. *Proffitt*, 109 S.C. 48; *Hill* v. *Polar Pantries*, 219 S.C. 263; *Palmer* v. *Brown*, 127 Cal. App. 2d 44. "It seems to be well settled that where 'a person holds himself out as specially qualified to perform work of a particular character, there is an implied warranty that the work which he undertakes shall be of proper workmanship and reasonable fitness for its intended use . . . .' " *Hill* v. *Polar Pantries,* supra, 271. See note, 25 A.L.R.2d 1085, "Responsibility of one acting as architect for defects or insufficiency of work attributable to plans."

The plaintiff claims that the case of *Kennedy* v. *Johns-Manville Sales Corporation,* 135 Conn. 176, is controlling of the law in this case and that § 52-584 is the applicable Statute of Limitations because the gravamen of the defendant's complaint is one of negligence rather than breach of contract. It may be noted that the second count in the *Johns-Manville* case was based on breach of contract. Id., 177. The court held that with respect to that count the six-year Statute of Limitations was applicable, i.e. § 6005 of the 1930 Revision (as amended, General Statutes § 52-576). Thus, we are concerned here with § 52-576, the six-year statute, and not with § 52-584, the one or at most three-year statute. The *Johns-Manville* case, supra, held that the Statute of Limitations ran on the breach of a building contract notwithstanding the fact that the defects in

the building were latent and unknown to the owner. The resulting defects in the house were not discovered until 1945. The court held that the Statute of Limitations had run on both counts. The difference between the *Johns-Manville* case and the present one is apparent in the first two sentences of the court's statement of the alleged facts (p. 177): "In 1935, the plaintiff engaged the defendant to insulate her house in Hartford. The defendant completed the work during that year, but did it 'in so unskillful, unworkmanlike and neligent a manner . . . .'" In the present case, the architect's duties involved supervision of the work.

In considering the application of the Statute of Limitations to this case, one must distinguish between a contract obligation, such as was undertaken by the plaintiff, providing for a continuing, indivisible responsibility for the attainment of an end result, and a contract for the performing of a specific, definable act. This distinction, as it relates to the medical field, was clearly articulated in *Giambozi* v. *Peters,* 127 Conn. 380, 385 (1940): "The term malpractice itself may be applied to a single act of a physician or surgeon or, again, to a course of treatment. The Statute of Limitations begins to run when the breach of duty occurs. When the injury is complete at the time of the act, the statutory period commences to run at that time. When, however, the injurious consequences arise from a course of treatment, the statute does not begin to run until the treatment is terminated." In *Handler* v. *Remington Arms Co.,* 1957, 144 Conn. 316, the Statute of Limitations did not begin to run until the continuing course of conduct was completed, although the defective cartridge had long since left the defendant's control. A fortiori, the statute should not begin to run in the present case during the period in which the plaintiff remained

in control of the "work" under the contract. See *Avent* v. *Proffitt,* supra; *Hill* v. *Polar Pantries,* supra; 5 Am. Jur. 2d, Architects, § 8, p. 669, § 23, p. 685.

It must, therefore, be concluded that the plaintiff is not entitled to a declaratory judgment that the Statute of Limitations is a bar to the defendant's proceeding with arbitration pursuant to its demand. Judgment may be entered for the defendant and the temporary injunction dissolved.