## HAR-MAR, INCORPORATED v. THORSEN & THORSHOV, INC.

218 N. W. 2d 751.

May 24, 1974—No. 44207.

*Henretta, Friedell, Share, McGinty & Solomon,* and *Fred R. Jacobberger,* for appellant.

*Briggs & Morgan, B. C. Hart,* and *Marvin T. Fabyanske,* for respondent.

Heard before Rogosheske, MacLaughlin, and Yetka, JJ., and considered and decided by the court en banc.

ROGOSHESKE, JUSTICE.

Plaintiff, Har-Mar, Incorporated, brought this action to enjoin an arbitration proceeding demanded by defendant, Thorsen & Thorshov, Inc., an architectural firm, and for a declaratory judgment declaring defendant's right to proceed with arbitration of a dispute concerning architectural fees barred by reason of our 6-year statute of limitations or, in the alternative, by waiver and laches. The trial court, by directing summary judgment for plaintiff, enjoined defendant Thorsen from proceeding further with arbitration, determining that such proceedings were barred by our statute of limitations and that Thorsen had waived its contractural right to arbitrate the dispute. Holding that Thorsen's contractual right to compel arbitration of the fee dispute is not barred by the statute of limitations and that the record does not establish a waiver of that right as a matter of law, we reverse and remand for trial on the merits of plaintiff Har-Mar's allegations of waiver and laches.

In April 1962, the parties entered into a contract whereby Thorsen agreed to furnish architectural services to Har-Mar in the construction of a shopping center in Roseville, Minnesota. Paragraph 12 of the contract provides for arbitration of future disputes arising under the contract and expressly states:

"Arbitration of all questions in dispute under this Agreement

shall be at the choice of either party and shall be in accordance with the provisions, then obtaining, of the Standard Form of Arbitration Procedure of The American Institute of Architects. This Agreement shall be specifically enforceable under the prevailing arbitration law and judgment upon the award rendered may be entered in the court of the forum, state or federal, having jurisdiction. The decision of the arbitrators shall be a condition precedent to the right of any legal action."

On December 19, 1963, Thorsen issued a certificate of completion which declared that the construction of the shopping center had been completed in accordance with the plans and specifications. The final billing was subsequently submitted to Har-Mar in March 1964. Thereafter, a dispute arose concerning the amount due Thorsen for architectural services. Negotiations were conducted during the months that followed, but unsuccessfully concluded in 1966 when Har-Mar rejected Thorsen's last compromise offer.

During the pendency of the disagreement over fees, a dispute arose over alleged defects in the roof of Har-Mar Mall. The roof dispute culminated in an action commenced in September 1966 by Har-Mar against Thorsen and others. Thorsen, whose fee dispute would have been a compulsory counterclaim,[1] preferred to have its dispute arbitrated rather than tried in conjunction with Har-Mar's action. For that reason, Thorsen wrote to Har-Mar on September 30, 1966, demanding that Har-Mar submit the fee dispute to arbitration and threatening to apply for a court order compelling arbitration. Through their respective counsel, Thorsen and Har-Mar reached an agreement on December 27, 1967, which allowed Har-Mar to adjudicate the roof dispute in court and Thorsen to reserve its fee dispute for "independent disposition."

On July 26, 1972, Thorsen caused a formal demand for arbitration of the dispute to be served on Har-Mar and filed notice of

---

[1] Rule 13.01, Rules of Civil Procedure.

the demand with the American Arbitration Association. On September 8, 1972, Har-Mar commenced this action for declaratory and injunctive relief, which resulted in the entry of summary judgment for Har-Mar. Thorsen appeals.

■ In a memorandum supporting its order for summary judgment, the trial court stated that "both arbitration and judicial proceedings are equally subject to the Statute of Limitations." Mindful that the question of the applicability of our statute of limitations to arbitration proceedings is one of first impression, we must disagree.

Minn. St. 541.05 reads in pertinent part:

"* * * [T]he following *actions* shall be commenced within six years:

(1) Upon a contract or other obligation, express or implied, as to which no other limitation is expressly prescribed." (Italics supplied.)

Minn. St. 645.45(2) defines "action" as "any proceeding in any *court* of this state." (Italics supplied.) However, since our statute of limitations was in existence as early as 1927, and since the definitional statute enacted in 1941 expressly limits its application to laws thereafter enacted, it follows that this statutory definition is not controlling.

Har-Mar points to Minn. St. 336.1—201(1) of the Uniform Commercial Code as a more recent legislative pronouncement of the meaning of "action," suggesting that it includes "any * * * proceedings in which rights are determined." We believe a full reading requires an interpretation that the term in the context of the issue presented is expressly restricted to judicial proceedings. The statute reads:

"(1) 'Action' *in the sense of a judicial proceeding* includes recoupment, counterclaim, setoff, suit in equity and any other proceedings in which rights are determined." (Italics supplied.)

The few Minnesota cases which have attempted a common-law definition of the term "action" have restricted it to "the prosecu-

tion in a court of justice of some demand or assertion of right by one person against another." See, e.g., Muirhead v. Johnson, 232 Minn. 408, 412, 46 N. W. 2d 502, 505 (1951). It thus appears that § 541.05, both by statutory definition and at common law, was intended to be confined to judicial proceedings.

Conceding that there is no controlling statutory definition of the term "action," Har-Mar argues that arbitration should be held to be an action subject to our 6-year statute of limitations by implication because (1) prior to legislative enactment of the Uniform Arbitration Act in 1957, no controversy could be arbitrated unless specific performance of the arbitration agreement could be judicially compelled;[2] and (2) after enactment, arbitration was even more clearly an action because the act authorizes arbitrators to determine legal as well as factual claims by employing procedures common to judicial proceedings, such as the subpoena of witnesses, the taking of depositions, and judicial action to confirm, vacate, modify, correct, and enforce an arbitration award. Such argument is contradictory of the historic objective, purpose, and intent of the Uniform Act. The statutory design of the act and its prototypes, the New York act of 1920 and the United States Arbitration Act of 1925, as advanced by the proponents of arbitration, is to encourage voluntary, speedy, inexpensive, private, and final out-of-court arbitration of commercial contractual disputes by commercial experts.[3] As we declared in Layne-Minnesota Co. v. Regents of University, 266 Minn. 284, 288, 123 N. W. 2d 371, 375 (1963):

[2] Minn. St. 1953, § 572.01, repealed by L. 1957, c. 633.

[3] See, e.g., Grover-Dimond Associates v. American Arbitration Assn. 297 Minn. 324, 211 N. W. 2d 787 (1973); Kulukundis Shipping Co. v. Amtorg Trading Corp. 126 F. 2d 978 (2 Cir. 1942); Prima Paint v. Flood & Conklin Mfg. Co. 388 U. S. 395, 87 S. Ct. 1801, 18 L. ed. 2d 1270 (1967); Aksen, *Prima Paint v. Flood & Conklin—What Does It Mean?*, 43 St. John's L. Rev. 1; Pirsig, *The Minnesota Uniform Arbitration Act and the Lincoln Mills Case,* 42 Minn. L. Rev. 333; Note, 52 Minn. L. Rev. 1218. But see, Moselely v. Electronic & Missile Facilities, 374 U. S. 167, 83 S. Ct. 1815, 10 L. ed. 2d 818 (1963).

"* * * Even though resort to courts is authorized, the basic intent of the act is to discourage litigation and to foster voluntary resolution of disputes in a forum created, controlled, and administered by the written agreement."

Supporting this view of the special, nonjudicial nature of arbitration proceedings is the case of Skidmore, Owings & Merrill v. Connecticut Gen. Life Ins. Co. 25 Conn. Supp. 76, 197 A. 2d 83 (1963). The Superior Court of Connecticut, faced with the application of a similar statute of limitations to arbitration proceedings, although not governed by the Uniform Act, held (25 Conn. Supp. 84, 197 A. 2d 87):

"Arbitration is not a common-law action, and the institution of arbitration proceedings is not the bringing of an action under any of our statutes of limitation. 'Arbitration is an arrangement for taking and abiding by the judgment of selected persons in some disputed matter, instead of carrying it to the established tribunals of justice * * *.' "

Har-Mar cites New York and California cases as authority for the proposition that arbitration proceedings are indeed actions and thus subject to the statute of limitations. The New York cases, however, are of little value since at the time the cases were decided New York's statutes of limitation included arbitration proceedings. See, Reconstruction Finance Corp. v. Harrisons & Crosfield, Ltd. 204 F. 2d 366 (2 Cir.), certiorari denied, 346 U. S. 854, 74 S. Ct. 69, 98 L. ed. 368 (1953).[4] It should also

----

[4] The present statute, 7B McKinney's Consol. Laws of New York Ann., Civil Practice Law and Rules, § 7502(b) provides in pertinent part: "If, at the time that a demand for arbitration was made or a notice of intention to arbitrate was served, the claim sought to be arbitrated would have been barred by limitation of time had it been asserted in a court of the state, a party may assert the limitation as a bar to the arbitration on an application to the court * * *. The failure to assert such bar by such application shall not preclude its assertion before the arbitrators, who may, in their sole discretion, apply or not apply the bar."

See, Jabine, *The Statute of Limitation and Arbitration in Connecticut*, 19 Arbitration Journal 206.

be noted that the California cases cited by plaintiff, Aetna Cas. & Surety Co. v. Superior Court, 233 Cal. App. 2d 333, 43 Cal. Rptr. 476 (1965); Pacific Ind. Co. v. Superior Court, 246 Cal. App. 2d 63, 54 Cal. Rptr. 470 (1966), involve uninsured-motorist statutes which similarly expressly require the commencement of arbitration proceedings within a specified period of time.

Based upon the special nature of arbitration proceedings and both the statutory and common-law meaning of the term "action," we feel compelled to hold that § 541.05(1) was not intended to bar arbitration of Thorsen's fee dispute solely because such claim would be barred if asserted in an action in court.

■ There remains the question of whether the right to compel arbitration, as distinguished from an action on the underlying claim, is barred. In its complaint, Har-Mar requested the district court to bar Thorsen not only from demanding arbitration but also "from bringing any other action on the aforesaid contract." Such relief necessarily raises the question of the application of the statute of limitations to a judicial proceeding to compel arbitration.

Clearly, an action in district court to compel arbitration is an action arising "upon a contract" and thus must be subject to the 6-year limitation prescribed by § 541.05(1). Such a cause of action accrues upon a demand for arbitration by one party and a refusal by the other. Proof of these two conditions precedent to the birth of such a cause of action is required by the Uniform Act, § 572.09(a) of which reads:

"On application of a party showing an agreement described in section 572.08, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration * * *."

It is thus clear that our 6-year limitation statute does not begin to run until there has been both a demand and a refusal to arbitrate. As there is no provision in the Uniform Arbitration Act limiting the time within which arbitration must be demanded, or if demanded, refused, this gap or arguable deficiency of the

act must be filled by agreement of the parties.[5] Nothing prevents the parties from including in the arbitration clause of their contract time limitations governing demand and refusal. Absent such time limitations in the agreement, our 6-year statute does not begin to run simply because of protracted and unsuccessful efforts of the parties to negotiate until there is proof of a proper demand and refusal to arbitrate. The parties at oral argument agreed that, although arbitration was demanded by Thorsen, Har-Mar did not refuse to arbitrate until commencement of this action. Therefore we must hold that our statute of limitations did not begin to run until September 8, 1972, and Thorsen's cause of action to compel arbitration is not barred.

■ The trial court also ruled that Thorsen, "by its unexplained 8½ year delay in commencing arbitration proceedings, waived any right it may have had to arbitrate." Review of this conclusion necessarily raises two questions: (1) Whether, upon this record, the court was justified in summarily determining that Thorsen's conduct "constitutes waiver as a matter of law"; and (2) since it is undisputed that a written agreement to arbitrate the fee existed, whether the court should have declined to decide this issue as one referable to arbitration.

Fraud in the inducement, waiver, laches, or limitation statutes, when asserted against a breach-of-contract claim, may be characterized as collateral defenses raising legal issues which, if established, preclude reaching the merits of the dispute sought to be arbitrated. While the term "waiver" is not susceptible of precise definition, for the purpose of reviewing the trial court's decision upon this appeal where the defense was interposed and considered as working a forfeiture of Thorsen's right to compel

---

[5] We are advised that the arbitration clause contained in the parties' agreement was a standard clause suggested by the American Institute of Architects. Subsequent to the decision in Skidmore, Owings & Merrill v. Connecticut Gen. Life Ins. Co. 25 Conn. Supp. 76, 197 A. 2d 83 (1963), the clause now suggested specifically requires that a demand for arbitration must be made within the time specified by the applicable statute of limitations.

arbitration of its fee dispute, it can be defined simply as "a voluntary relinquishment of a known right." Beck v. Spindler, 256 Minn. 543, 564, 99 N. W. 2d 670, 684 (1959). Applying this definition to the facts disclosed upon Har-Mar's motion for summary judgment, we must hold that the trial court's factual conclusion cannot be sustained. Even though many years of unexplained delay followed the initial fee dispute, there are no facts in the record supporting Thorsen's voluntary relinquishment of its contractual right to arbitrate. Indeed, by the 1967 agreement, Thorsen specifically reserved its fee dispute for "independent disposition," presumably by arbitration. Further, it is undisputed that Har-Mar, during protracted settlement negotiations, did not refuse to arbitrate until September 1972 when this action was commenced, a factor that virtually precludes finding an implied waiver prior to that time.[6] These facts negate any inference of voluntary relinquishment drawn by the trial court from mere unexplained delay of Thorsen in seeking to compel arbitration.

The more difficult jurisdictional question as to which forum should decide the issues of laches and waiver need not be answered. Although implicitly ruled on by the trial court, the question was neither raised nor argued below or here. Moreover, both parties appear agreed that the court, rather than the arbitrators, should decide the merit of these issues on a remand; and agreement, whether or not constituting a modification of the intended scope of their arbitration clause, the parties are perfectly free to make.

Reversed and remanded.

Mr. Chief Justice Sheran, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

Mr. Justice Knutson took no part in the consideration or decision of this case.

---

[6] Cf. Sears Roebuck & Co. v. Herbert H. Johnson Associates, Inc. 325 F. Supp. 1338 (D. P. R. 1971).