[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
This is an action to recover damages for cleanup of property contaminated by hazardous waste. The defendant's motion for summary judgment raises the legal issue as to which statute of limitations applies to actions for indemnification for environmental cleanup costs.
The subject property in Danbury was leased by MITE Corp. a predecessor corporation of the defendant, Emhart Corporation, from September, 1963 to January 2, 1979. MITE maintained lagoons for the treatment of waste water as part of its manufacturing operations on the subject property. On November 21, 1978, the plaintiff, Electroformers, Inc., entered into a written agreement with MITE which provided for (1) a sale of some of the assets and business of the GAR Electroformers Division of MITE, (2) a sublease of the subject property, and (3) an option to buy the property. The agreement provided for a closing date of January 2, 1979. The closing occurred on that date, and the plaintiff purchased the division of MITE related to the subject property, and subleased the property from MITE. Prior to the closing date, the plaintiff knew about MITE's discharge into the lagoons on the subject property. Paragraph one of the agreement provided for a sale of specified assets of MITE to Electroformers for a purchase price of $300,000, and it contained an indemnity provision which provided: "Buyer will not assume any of the liabilities of the GAR Electroforming Division existing on the date of the closing and MITE agrees CT Page 710 to defend any claims relating thereto presented against Buyer and to save Buyer harmless from any such claims."
On March 29, 1983, the Connecticut Department of Environmental Protection (DEP) issued an environmental cleanup order and closure plan for the lagoons. The plaintiff first incurred cleanup costs on January 31, 1986 in carrying out the prior order of DEP. MITE had received a series of DEP orders prior to the sale of assets to Electroformers, but none of those orders required cleanup of the deposits in the treatment lagoons, and as of January 2, 1979, there were no outstanding orders from the DEP or the United States Environmental Protection Agency for the subject property. On July 13, 1983, an affiliate of Electroformers purchased the property. Electroformers had closed the lagoons as required by the DEP by October, 1985, commenced clean up of them on January 31, 1986, and finally made a demand to MITE to reimburse Electroformers for a pro rata share of the cleanup costs by letter dated October 24, 1986. MITE refused the demand, but this action was not started until about two and one-half years later, on March 20, 1989.
The first count of the complaint requests reimbursement under section 22a-452 of the General Statutes for cleanup costs and removing the portion of chemical liquids and solids that might have discharged into the lagoons between 1963 and 1979. The second count of the complaint is based on the indemnity provision in the November 21, 1978 agreement, and claims that MITE has responsibility for the liabilities it created before the closing date, and that this includes the environmental cleanup cost incurred by the plaintiff in 1986.
MITE was merged into the defendant, Emhart Corporation, in July, 1985, and for purposes of the motion for summary judgment, Emhart concedes that it is responsible for MITE's liabilities under the indemnification agreement and the statute. The motion for summary judgment claims that the statute of limitations bars indemnification actions under both section 22a-452 of the General Statutes and the assets purchase agreement (hereafter "agreement" or "APA"), and that the agreement itself precludes the plaintiff from recovering under section 22a-452 for liabilities not existing on the closing date, January 2, 1979.
Summary judgment may be granted where an action was not CT Page 711 commenced within the period of the statute of limitations. Burns v. Hartford Hospital, 192 Conn. 451, 454; Arsenault v. Pa-Ted Spring Co., 203 Conn. 156, 158. To determine if the defense exists, it must be clear when the statute of limitations began to run against each claim and which statute of limitations applies. The first issue presents factual questions. Summary judgment can be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Connelly v. Housing Authority, 213 Conn. 354, 364; Bartha v. Waterbury House Wrecking Co., 190 Conn. 8, 11. Summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried. Wilson v. New Haven, 213 Conn. 277, 279. A material fact is one that will make a difference in the result of the case. Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573, 578. In determining whether there is an issue of material fact, the evidence is considered in the light most favorable to the nonmoving party. Connell v. Colwell, 214 Conn. 242, 246,247. The test on whether a summary judgment should be granted is resolved by applying to the established facts the same criteria as are used in determining whether a party would be entitled to a directed verdict on the same facts. Connelly v. Housing Authority, supra, 364; State v. Goggin,208 Conn. 606, 616.
Most of the essential facts concerning the history of the property are undisputed. The parties agree that the purchase of assets and sublease of the property occurred on January 2, 1979, even though they disagree as to the meaning of the indemnification provision in the agreement. Under the terms of the agreement itself, MITE was responsible for any liabilities of the division sold to the plaintiff as of that date. As a result of the written agreement and the sublease of the subject property which went with it, MITE no longer had any control over the property or the lagoons on it as of January 2, 1979. Another material undisputed date is the purchase of the property by the plaintiff's affiliate on July 13, 1983, four and one-half years later. The plaintiff's demand for partial reimbursement of environmental cleanup cost occurred more than three years after that on October 24, 1986, and this action was started two years and five months later on March 23, 1989.
The second count of the complaint is based upon the CT Page 712 indemnification provision in the written agreement between the parties. The statute of limitations for a written contract is section 52-576 of the General Statutes which requires commencement of the action "within six years after the right of action accrues. . . ." With an action for breach of contract, the cause of action is complete at the time the breach of contract occurs, which is when the injury has been inflicted, and ignorance of the fact that damage has been done does not prevent running of the statute of limitations except where there is something amounting to a fraudulent concealment of a cause of action. Beckenstein v. Potter Carrier, Inc., 191 Conn. 150, 156; Kennedy v. Johns-Manville Sales Corporation, 135 Conn. 176, 179-180. Both of these cases concerned defective work on a building. The cause of action for breach of contract resulting in legal damages accrued when the work was done rather than by any subsequent neglect on the part of the defendant. The fact that the plaintiff was not aware of the injury or extent of the damages until later was irrelevant. In Beckenstein v. Potter Carrier, Inc., supra, 157, 158, the court also rejected a theory of continuing duty on the part of one of the defendants. In this case, the depositing of hazardous materials in the lagoons by MITE occurred prior to the closing on January 2, 1979, and at no time thereafter. Moreover, under the agreement, MITE assumed liabilities existing as of the date of closing. If by the provision in the contract MITE assumed responsibility for the materials previously deposited on the property, its liability existed as of January 2, 1979, and the plaintiff's cause of action for breach of contract accrued at that time. Since this action was not commenced until more than ten years later, a breach of contract claim is barred by section 52-576.
However, the provision in the contract arguably contains three components: (1) MITE assumes the liabilities of the division sold to Electroformers which existed on the date of closing; (2) MITE will defend claims presented against the plaintiff for liabilities existing on the date of closing; and (3) MITE will save the plaintiff harmless from claims presented against the plaintiff. Section 52-576 bars the first component, and the second one is not in dispute in this action. The third component provides for indemnification to the plaintiff for claims based on liabilities of the division sold by MITE which existed on the closing date, January 2, 1979. This provision amounts to a contract for CT Page 713 indemnification, subject to a different analysis for statute of limitations purposes.
There is a difference between contract indemnification claims, Balboa Insurance Co. v. Zaleski, 12 Conn. App. 529, cert. denied, 206 Conn. 802, and indemnification for a tort, Protter v. Brown Thompson Co., 25 Conn. App. 360, 364. In determining when a cause of action accrues on an indemnity agreement, the question is whether the contract is to indemnify against liability or to indemnify against loss. Where an agreement indemnifies against liability, the cause of action arises as soon as liability is incurred, but where the agreement indemnifies against loss, the cause of action does not arise until a loss has occurred. Balboa Insurance Co. v. Zaleski, supra, 533; Calamita v. DePonte, 122 Conn. 20,23. In Fairfield v. D'Addario, 149 Conn. 358, a town entered into a sewer construction contract which contained a provision for the contractor to indemnify the town and save it harmless from claims and liability for loss by any person for conditions arising out of the contract, and the defendant also agreed to defend actions brought against the town for such losses. The court construed the agreement as one of indemnity against liability and the contractor's obligation to defend the town arose when an action was brought against the town by a third party to recover for personal injuries. While recognizing the distinction between contracts which indemnify against liability and those which indemnify against loss, the court upheld the trial court's construction of the indemnity provision to be one against liability. Implicit in the decision, however, is that the terms of the indemnity provision control the result, provisions may differ, and each situation presents a mixed question of fact and law.
In this case the DEP order to clean up the property was issued March 29, 1983. The action was commenced with service of the complaint upon the defendant on March 23, 1989, Beckenstein v. Potter Carrier, Inc., supra, 156, and if the right to indemnification accrued when the DEP order was issued, the contractual claim for indemnification was commenced within the six year statute of limitations in section 52-576. It is not appropriate on a motion for summary judgment for the court to interpret the indemnification agreement and decide the related question when the cause of action for indemnification accrued. Since the second count of the complaint contains both the breach of CT Page 714 contract claim and indemnification claim, summary judgment cannot be granted on the second count.
The first count is a claim for indemnification based on section 22a-452 of the General Statutes, which creates a civil action for reimbursement for reasonable costs extended for the containment, removal or mitigation of pollution or contamination. A party who cleans up the hazardous materials is entitled to reimbursement from any person, firm or corporation which "resulted from the negligence or other actions of such person, firm or corporation." The statute also provides that "[w]hen such pollution or contamination or emergency results from the joint negligence or other actions of two or more persons, firms or corporations, each shall be liable to the others for a pro rata share of the costs of containing, and removing or otherwise mitigating the effects of the same and for all damage caused thereby." Section 22a-452(a) of the General Statutes. It has been recognized that this statute creates a private cause of action for reimbursement for cleaning up environmental contamination from hazardous waste. Colonnade One v. Electrolux Corporation, 767 F. Sup. 1215, 1219 (D.Conn. 1991).
The statute does not contain within it any specified time limits for an action for reimbursement of cleanup costs. The parties dispute which statute of limitations applies and when a cause of action accrues. As previously stated, there is no disputed factual issue as to the dates when particular events in the history of the property occurred. The statute is sufficiently broad to cover cleanup costs for hazardous materials that have been standing on real property for a period of time, but there is nothing in the statute to suggest that a person, firm or corporation that placed hazardous waste or similar materials on real property is liable for an infinite period of time to someone who cleans it up (whether under an order from DEP or otherwise) many years after the discharge or placement of the materials.
The statute is also directed to reimbursement of costs incurred in cleaning up oil and chemical spills, and is related to other statutes such as section 22a-451 which address similar environmental problems with spills and discharges of hazardous materials. The defendant argues that the claims under section 22a-452 are barred by the two year statute of limitations in section 52-577c or would also be CT Page 715 barred under section 52-577. The plaintiff claims that the court should apply a six year limitation period similar to the one in the federal Comprehensive Environmental Response Compensation and liability Act of 1980 (CERCLA),42 U.S.C. § 9601 et seq., and that the statute should run from when the plaintiff began cleanup of the lagoons on January 30, 1985. Neither the federal statute of limitations nor the time periods in similar statutes in other states is controlling here. While no Connecticut case has apparently defined which statute of limitations applies for indemnification under section 22a-452 or when the time period commences, or construes section 52-577c, it is apparent that either section 52-577 or 52-577c applies and that either statute bars the claim here.
Section 52-577c is entitled "Limitation of action for damages caused by exposure to a hazardous chemical substance or mixture or hazardous pollutant." Subsection (b) of the statute provides:
 Notwithstanding the provisions of sections 52-577 and 52-577a, no action to recover damages for personal injury or property damage caused by exposure to a hazardous chemical substance or mixture or hazardous pollutant released into the environment shall be brought but within two years from the date when the injury or damage complained of is discovered or in the exercise of reasonable care should have been discovered.
The terms "hazardous chemical substance or mixture" and "hazardous pollutant" are defined in the statute and include chemicals considered to be a hazardous substance under CERCLA. There appears to be no dispute that the material in the lagoons cleaned up by the plaintiff qualifies under these definitions. The environment is defined as including surface water and land surface within the state, and release is defined as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping or disposing into the environment." Accordingly, the activity of placing the materials in the lagoons and related actions by MITE fit within the terms of the statute. The existence of the materials was known to the plaintiff before it entered into the agreement with MITE. The exact effect of the statute remains unclear, however, CT Page 716 because it applies to actions "to recover damages for personal injury or property damage caused by exposure" to the hazardous materials. (Emphasis added.) "Exposure" is defined in subsection (a)(2) as "any contact, ingestion, inhalation or assimilation, including irradiation." The statute covers damage to property caused by contact with the materials.
The plaintiff argues that an indemnification action for cleanup costs under section 22a-452 is not an action to recover for property damage. The defendant counters that the plaintiff's entire theory of recovery is that MITE contaminated the subject property when it operated at the site. While cases considering the question are divided, a majority view is that cost recovery actions are claims for damages. See Avondale Industries, Inc. v. Travelers Indemnity Co., 887 F.2d 1200, 1207 (2d Cir. 1989), cert. denied, 496 U.S. 906 (1990); Hays v. Mobil Oil Corporation,930 F.2d 96 (1st Cir. 1991); Newcastle County v. Hartford Accident Indemnity Co., 673 F. Sup. 1359, 1365 (D.Del. 1987); AIU Insurance Co. v. Superior Court, 51 Cal.3d 807,828-37 274 Cal.Rptr. 820, 836-842, 799 P.2d 1253, 1269-75
(1990). Accepting the plaintiff's position requires concluding that even though a property owner is limited to two years to bring suit for a tortious depositing of hazardous materials on its property, that it gets a much longer time period commencing at some indefinite point in the future to bring suit against the wrongdoer when it decides or is required to clean up the hazardous materials. Section 22a-452(a) allows recovery of cleanup costs which "resulted from the negligence or other actions" of the wrongdoer, suggesting that the court should look to the applicable statute of limitations under chapter 926 for the act in question. Unfortunately, the legislative history on both sections 22a-452 and 52-577c does not resolve exactly which statute of limitations to apply. Arguably, the most analogous statute is section 52-577c, but if not, the statute of limitations in negligence actions (52-584) or the general tort statute (52-577) would apply.
Accrual of the two year time limitations in both sections 52-577c and 52-584 are similar in that the action must be brought within two years from the date when the injury or damage is sustained or discovered or in the exercise of reasonable care should have been discovered. CT Page 717 Restricting the claimant from seeking indemnification after more than two years from obtaining knowledge of the existence of hazardous materials on the property is reasonable. Section 52-577c does not preclude the injured property owner from recovering damages for materials deposited on its property without its knowledge and which could not have been reasonably discovered within two years after they were deposited. That is not a problem here, as the plaintiff knew of the existence of the materials at the time of the agreement and sublease in January, 1979, at the time of the DEP order in March, 1983, and when an affiliate of the plaintiff purchased the property on July 13, 1983.
Labeling what is really a property damage claim as an action for indemnification does not avoid the statute of limitations. Even if section 52-577c does not apply, the claims are barred by section 52-577 which provides that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." Section 52-577 applies to all tort claims except those which are specifically governed by another statute of limitations. Lambert v. Stovell, 205 Conn. 1, 4; Collins v. New Canaan Water Co., 155 Conn. 477, 490, 491; United Aircraft Corporation v. International Assn. of Machinists, 161 Conn. 79,107. The depositing of materials on property which causes pollution damage may be the basis for a claim of nuisance. Filisko v. Bridgeport Hydraulic Co., 176 Conn. 33. Section 52-577 is the statute of limitations for a nuisance claim. Collins v. New Canaan Water Co., supra, 490, 491; Brandlhuber v. Hartford, 17 Conn. Sup. 114.
The Connecticut statute of limitations for torts, unlike those of most other jurisdictions which begin to run when a cause of action has accrued, commence with the act or omission complained of, which is when the tortious conduct of the defendant occurs and not the date when the plaintiff first sustains damage. Prokolkin v. General Motors Corporation, 170 Conn. 289, 294-297 (construing section 52-577); McDonald v. Haynes Medical Laboratory, Inc.,192 Conn. 327, 330; Vilcinskas v. Sears, Roebuck Co., 144 Conn. 170,173 (construing section 52-584). An allegation of continuing failure to warn of the defect does not prevent the statute from commencing to run from the date of the completed wrongful act. Prokolkin v. General Motors Corporation, supra, 307. The right to bring an action commences when the CT Page 718 work occurs on the property and not when the damage becomes apparent to the property owner, even if discovery of it occurs after the statute of limitations has run. Kennedy v. Johns-Manville Sales Corporation, supra, 179, 180 (action for damages for defective insulation of a building based on negligence and breach of contract held barred by sections52-576 and 52-584). To carry out the purposes of a statute of limitations, the legislature can establish a three year time period that runs from the date of the act or omission complained and bar a claim even though in some cases the claimant may not sustain damage until after the statute has run. Ecker v. West Hartford, 205 Conn. 219, 240, 241.
In Protter v. Brown, Thompson Co., 25 Conn. App. 360,364, 365, the Appellate Court held that the statute of limitations to be applied in a claim for indemnification for damages arising out of tortious conduct is section 52-577. For the purposes of an indemnification claim under the statute, the act or omission complained of would be when the wrongful conduct occurred, and the three year time limit would run from that date, even though it could on occasion bar an action even before the party claiming indemnification sustained damages. Id., 365.
The general rule is that there is no right of indemnity among joint tortfeasors. Ferryman v. Groton, 212 Conn. 138,142. An exception has been recognized, allowing indemnity by a party whose conduct amounted to passive or secondary negligence against another party who was guilty of active or primary negligence. Id., 143; Burkert v. Petrol Plus of Naugatuck, Inc., 216 Conn. 65, 74; Kaplan v. Merberg Wrecking Corporation, 152 Conn. 405, 415, 416. Unlike indemnification by contract, it is indemnification as a matter of law, as is the right to reimbursement created by statute in section 22a-452. Since that statute does not have a limitation period for indemnification actions, section 52-577 applies, unless the facts fit within the two year statute of limitations for damages caused by exposure to a hazardous substance set forth in section 52-577c. Under the facts of this case, it is unnecessary to decide which of these two statutes applies, since the commencement of the indemnification action on March 23, 1989 was well beyond the three year limitation period for indemnification, whether it is measured from the date the materials were deposited on the property, when the plaintiff acquired its interest in the CT Page 719 property from the defendant's predecessor, when the DEP issued a cleanup order, or when the plaintiff first incurred damages in the form of cleanup costs. The condition was known to the plaintiff when it entered into the agreement with MITE in 1978. No matter how the plaintiff labels its claimed losses, costs and expenses, they all resulted from conditions existing at that time. See Armotek Industries, Inc. v. Freedman, 790 F. Sup. 383, 392 (D.Conn. 1992). It is unnecessary to resolve whether the three year time limit in section 52-577 for indemnification actions based on section 22a-452 commences when cleanup costs of the plaintiff begin or end, or at an earlier date, since the plaintiff waited more than three years after any of these events to commence suit. The date of demand for reimbursement is immaterial.
The motion for summary judgment is granted as to the first count and denied as to the second count.
Robert A. Fuller, Judge