**GTFM, LLC., Plaintiff–Appellee,**

v.

**TKN SALES, INC., Defendant–Appellant.**

No. 00–7490.

United States Court of Appeals, Second Circuit.

Argued Nov. 1, 2000.

Decided July 20, 2001.

Before: KEARSE, LEVAL, and SOTOMAYOR, Circuit Judges.

Judge SOTOMAYOR concurs in a separate opinion.

KEARSE, Circuit Judge:

Defendant TKN Sales, Inc. ("TKN"), appeals from a final judgment of the United States District Court for the Southern District of New York, Barbara S. Jones, *Judge*, (1) declaring that, as applied to plaintiff GTFM, LLC. ("GTFM"), the requirement of the Minnesota Sales Representative Act, Minn.Stat. § 325E.37 (1995), that certain claims for violation of that statute be resolved only through binding arbitration denies GTFM a jury trial, in violation of the Seventh Amendment to the United States Constitution, and (2) permanently enjoining TKN from demanding arbitration of its current dispute with GTFM under the Minnesota statute. The district court ruled principally that TKN's statutory claims against GTFM were analogous to common-law claims for breach of contract and that the statute's requirement that they be submitted to binding arbitration is thus unconstitutional. TKN challenges that conclusion on appeal. For the reasons that follow, we conclude that the Minnesota statute does not violate GTFM's Seventh Amendment rights, and we reverse.

## I. BACKGROUND

Although there is an underlying controversy between the parties, the facts material to this appeal are not in dispute. GTFM, a New York limited liability company headquartered in New York, is a manufacturer of apparel. TKN, a Minnesota corporation whose principal place of business is in Missouri, is an apparel distributor. In 1996, GTFM and TKN entered into an oral agreement for TKN to

Stewart D. Aaron, New York, NY, (Dorsey & Whitney, New York, NY, Michael Iwan, Dorsey & Whitney, Minneapolis, MN, on the brief), for Plaintiff–Appellee.

D. Clay Taylor, Minneapolis, MN, (Laurent S. Drogin, Drogin & Drogin, New York, NY, on the brief), for Defendant–Appellant.

distribute one of GTFM's clothing lines to retailers in various locations, including Minnesota. TKN's compensation was to be in the form of commissions based on the quantity of goods it sold. In mid 1999, disputes arose between TKN and GTFM with respect to the terms and performance of the contract.

The Minnesota Sales Representative Act ("MSRA" or the "Act") applies to sales representative agreements, *i.e.*, agreements by which, *inter alia*, a manufacturer grants a sales representative the right to offer the manufacturer's goods for sale, where there is "a community of interest between the parties in the marketing of the goods at wholesale," Minn.Stat. § 325E.37, subd. 1(e). A sales representative, within the meaning of the Act, is one "who is compensated, in whole or in part, by commission," *id.* subd. 1(d), and who is a Minnesota resident, or whose principal place of business is in Minnesota, or whose geographic sales territory includes all or part of Minnesota, *see id.* subd. 6(a). As set forth in greater detail in Part II.B. below, the Act contains provisions governing, *inter alia*, the termination or renewal of such agreements and the prompt payment of commissions. The Act also provides that "[t]he sole remedy for a manufacturer ... who alleges a violation of any provision of this section is to submit the matter to arbitration," Minn.Stat. § 325E.37, subd. 5(a), and that a sales representative has the option of either submitting a matter to arbitration or bringing suit in court, *see id.* The arbitrator is given the power to, *inter alia*, reinstate the agreement, award damages, and grant other relief for frivolous claims or defenses. *See id.* subd. 5(b). The arbitrator's decision, though subject to judicial confirmation, is "final and binding." *Id.* subd. 5(c).

In August 1999, pursuant to MSRA § 325E.37, subd. 5, TKN served on GTFM a demand for arbitration ("Arbitration Demand") to be conducted by the American Arbitration Association in Minneapolis, Minnesota, and a complaint ("Arbitration Complaint"). The demand described the nature of the dispute as "[w]rongful termination of independent sales representative agreement in violation of Minn.Stat. § 325E.37, Subdivision 2," and "[f]ailure to pay earned commissions in violation of Minn.Stat. § 325E.37, Subdivision 4 and Minn.Stat. § 181.145." (TKN Arbitration Demand dated August 24, 1999.) The Arbitration Complaint asserted the above claims for statutory violations, plus a common-law claim for breach of contract; it requested, *inter alia*, reinstatement of the sales representative agreement, damages in excess of $50,000 for each of TKN's three claims, and attorneys' fees. GTFM, after unsuccessfully seeking a stay of the proceedings and a transfer of the arbitration from Minneapolis to New York City, commenced the present action in the Southern District of New York.

GTFM's complaint challenged the constitutionality of MSRA on the ground that its provision for arbitration violates GTFM's right to a jury trial under the Seventh Amendment to the Constitution. GTFM premised federal jurisdiction on the existence of a federal question, to wit, MSRA's constitutionality, and on diversity of citizenship. Although GTFM's complaint contained allegations as to the merits of the underlying business dispute, its only requests for relief, other than the usual catchall phrase ("such other and further relief as to the court seems just and proper"), were for (1) a declaratory judgment that the Act as applied would violate its Seventh Amendment right to a jury trial, and (2) a permanent injunction against arbitration. GTFM moved for a preliminary injunction to halt the pending

Minnesota arbitration; TKN cross-moved to dismiss GTFM's complaint. The district court, with the consent of the parties, treated GTFM's motion as one for summary judgment, and proceeded directly to the merits of GTFM's attack on the Minnesota statute.

In an Opinion & Order dated April 7, 2000, 2000 WL 364871 ("Opinion"), relying principally on *Chauffeurs, Teamsters & Helpers Local 391 v. Terry,* 494 U.S. 558, 564, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990), and *Tull v. United States,* 481 U.S. 412, 417, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987), the district court ruled that GTFM is entitled to a jury trial because most of TKN's claims, including those asserted under MSRA, seek legal, as contrasted with equitable, relief. The court began by noting that

> [t]he Seventh Amendment preserves the right to a jury trial in "[s]uits at common law" in federal court. U.S. Const. amend. VII; *Tull v. United States,* 481 U.S. 412, 417, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987). The right to a jury trial "is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 501, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959) (internal quotation and citation omitted).
>
> The Seventh Amendment right to a jury trial attaches to suits in federal court in which legal rights and remedies, as distinguished from equitable rights and remedies, are to be determined. *See Chauffeurs, Teamsters & Helpers Local 391 v. Terry,* 494 U.S. 558, 564, 110 S.Ct. 1339, 108 L.Ed.2d 519 [ (1990) ]; *Curtis v. Loether,* 415 U.S. 189, 193, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974); *Daisy Group, Ltd. v. Newport News, Inc.,* 999 F.Supp. 548, 550

(S.D.N.Y.1998). That is, the Seventh Amendment applies not only to common law causes of action that existed in the eighteenth century, "but also to 'actions brought to enforce statutory rights that are analogous to common-law causes of action.'" *Feltner v. Columbia Pictures Television, Inc.,* 523 U.S. 340, 348, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998) (quoting *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 42, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989)); *Tull,* 481 U.S. at 417, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987).

Opinion at 9–10, 2000 WL 364871 (footnote omitted). The court dismissed TKN's argument that the Seventh Amendment has not been incorporated into the Fourteenth Amendment and hence gives GTFM no right to avoid arbitration here, stating that

> [t]his argument—true as far as it goes—misses the mark. But for the MSRA's mandatory and binding arbitration system, TKN would have had to commence its action in either state or federal court, because it is undisputed that there was no agreement among the parties to arbitrate. Had TKN commenced this action in state court, there is no dispute that GTFM would have had the right to remove the matter to federal court under 28 U.S.C. § 1332. Once in federal court, GTFM would have the right to a jury trial.
>
> The fact that the MSRA, a state law, requires arbitration does nothing to change this conclusion. The right to a jury trial in federal court is clearly a question of federal law. *Simler v. Conner,* 372 U.S. 221, 222, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963); *Kampa v. White Consolidated Industries, Inc.,* 115 F.3d 585, 587 (8th Cir.1997). Federal law controls the issue, even in cases such as this, where the federal court would be enforcing a state-created right and

"even when a state statute or state constitution would preclude a jury trial in state court." *Gipson v. KAS Snacktime Co.*, 83 F.3d 225, 230 (8th Cir.1996) (citing *Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525, 538–39, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958)).

Opinion at 8 n. 6, 2000 WL 364871.

The district court stated that TKN's common-law claim for breach of contract was one as to which GTFM clearly has a right to a jury trial. *See id.* at 11. It ruled that GTFM has the right to a jury trial as well on TKN's claim under § 181.145 of the Minnesota statutes for unpaid commissions and lateness penalties because that claim seeks both a traditional legal remedy, as to which a jury trial right attaches, and civil penalties, *i.e.*, " '[r]emedies [that are] intended to punish culpable individuals, as opposed to those intended simply to extract compensation or restore the status quo,' " which traditionally " 'were issued by courts of law, not courts of equity,' " *id.* at 11 (quoting *Tull v. United States*, 481 U.S. at 422, 107 S.Ct. 1831).

As to TKN's claims that GTFM violated other provisions of MSRA, causes of action that did not exist at common law, the court stated, in pertinent part, as follows:

To determine whether the right to a jury trial attaches to MSRA claims, the Court applies the two-prong *Tull* analysis, mindful that the second inquiry is the more important. *See Tull*, 481 U.S. at 417–18, 107 S.Ct. 1831. As for the first inquiry—whether the nature of the issues involved [is] analogous to actions at common law—the MSRA provides a specialized remedy for a breach of contract claim involving sales representatives and supplies additional terms to sales representative agreements regarding notice and grounds for termination. An action brought pursuant to the MSRA, therefore, is premised on a

breach of contract, including the terms added by the statute. " 'The Seventh Amendment question depends on the nature of the *issue* to be tried rather than the character of the overall action.' " *Terry*, 494 U.S. at 569, 110 S.Ct. 1339 (quoting *Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970) [emphasis in *Terry* ] ). Because TKN's MSRA claim presents the legal issue of breach of contract, the first prong of the *Tull* test would strongly suggest that GTFM is entitled to a jury trial....

The second, and more important, *Tull* inquiry ... resolves the issue. It requires the Court to examine the remedy sought and determine whether it is legal or equitable. *See Terry*, 494 U.S. at 570, 110 S.Ct. 1339. On its MSRA claim, TKN seeks contract damages, a civil penalty under Minn.Stat. § 181.145 and reinstatement of the contract. *See* Minn.Stat. § 325E.37(5)(b). As discussed above, contract damages and the civil penalty are clearly legal remedies.

Opinion at 12–13. The court noted that although reinstatement of the contract would be equitable relief, the joinder of that claim with legal claims did not eliminate GTFM's right to a jury trial on the legal claims. *See id.* at 13.

The court concluded that "because the MSRA's mandatory and binding arbitration system operates to deny GTFM its right to a jury trial, the MSRA is unconstitutional as applied to these facts." Opinion at 14 (footnote omitted). The court declared the MSRA provision for arbitration unconstitutional and permanently enjoined the Minnesota arbitration proceeding. This appeal followed. For the reasons that follow, we reverse.

## II.  DISCUSSION

The Seventh Amendment to the United States Constitution provides, in pertinent

part, that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...." U.S. Const. amend VII. The Federal Rules of Civil Procedure, governing cases in the federal courts, provide that "[t]he right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate." Fed.R.Civ.P. 38(a).

■ The Seventh Amendment has not, however, been applied to the States through the Fourteenth Amendment and hence does not require that jury trials be held in proceedings in State tribunals. *See, e.g., Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 418, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996) ("Seventh Amendment ... governs proceedings in federal court, but not in state court"); *Curtis v. Loether,* 415 U.S. 189, 192 n. 6, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974) (Supreme Court "has not held that the right to jury trial in civil cases is an element of due process applicable to state courts through the Fourteenth Amendment"); *Walker v. Sauvinet,* 92 U.S. 90, 92, 23 L.Ed. 678 (1875) ("The States, so far as [the Fourteenth] amendment is concerned, are left to regulate trials in their own courts in their own way. A trial by jury ... is not, therefore, a privilege or immunity of national citizenship, which the States are forbidden by the Fourteenth Amendment to abridge.").

The district court, as set out in Part I above, viewed the inapplicability of the Seventh Amendment to State proceedings as irrelevant because if TKN had sued GTFM in State court, "GTFM would have had the right to remove the matter to federal court under 28 U.S.C. § 1332," and "[o]nce in federal court, GTFM would have the right to a jury trial," because "[t]he right to a jury trial in federal court is clearly a question of federal law[,] *Simler v. Conner,* 372 U.S. 221, 222, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963) [ (per curiam) ]," Opinion at 8 n. 6; federal law requires a jury trial when the claims asserted and at least some of the remedies sought are legal rather than equitable, *see id.* at 9–10, 12–14. However, other than *Simler,* most of the cases relied on by the district court for the proposition that federal law is determinative are cases in which the jurisdiction of the district court was premised on the presence of federal questions. *See, e.g., Feltner v. Columbia Pictures Television, Inc.,* 523 U.S. 340, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998) (copyright infringement, 17 U.S.C. § 504(c)); *Chauffeurs, Teamsters & Helpers Local 391 v. Terry,* 494 U.S. 558, 110 S.Ct. 1339, 108 L.Ed.2d 519 (Labor–Management Reporting and Disclosure Act, 29 U.S.C. § 185); *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) (suit by bankruptcy trustee, *see* 11 U.S.C. § 548(a)); *Tull v. United States,* 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987) (Clean Water Act, 33 U.S.C. § 1319); *Curtis v. Loether,* 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974) (Fair Housing Act, 42 U.S.C. § 3612); *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959) (Sherman and Clayton antitrust laws, 15 U.S.C. §§ 1, 2, 15).

To be sure, *Simler v. Conner,* cited by the district court, was a diversity case; but the focus of that case was simply whether a lawyer's suit to recover fees from his client should be characterized as legal or equitable, and the precise question was whether the proper characterization was a matter of federal law or state law. With that focus in mind, the *Simler* Court stated that "the characterization of that state-created claim as legal or equitable for purposes of whether a right to jury trial is indicated must be made by recourse to

federal law," 372 U.S. at 222, 83 S.Ct. 609; but *Simler* prefaced that statement with the observation that "[i]n diversity cases, of course, the substantive dimension of the claim asserted finds its source in state law," *id.*

## A. Substantive State Limitations in Diversity Cases

When a federal court's jurisdiction is based on diversity of citizenship, "[w]e put to one side the considerations relevant in disposing of questions that arise when a federal court is adjudicating a claim based on a federal law," *Guaranty Trust Co. v. York,* 326 U.S. 99, 101, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), and we act as "only another court of the State," *id.* at 108, 65 S.Ct. 1464. In *Guaranty Trust,* the Court considered whether a federal court whose jurisdiction over a suit for breach of trust was based solely on diversity was required to honor a state statute of limitations. The Court stated that the answer depended on whether the state's statute governed merely the manner and means by which a plaintiff could recover or whether it was instead "a matter of substance" in the sense that the federal court's disregard of the statute would "significantly affect the result of [the] litigation," causing that result to differ from the outcome that would be reached in state court. *Id.* at 109, 65 S.Ct. 1464. The Court stated that the intent of the decision in *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938),

> was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, *the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court* . . . .

Plainly enough, a statute that would completely bar recovery in a suit if brought in a State court bears on a State-created right vitally and not merely formally or negligibly. As to consequences that so intimately affect recovery or non-recovery a federal court in a diversity case should follow State law. *Guaranty Trust,* 326 U.S. at 109–10, 65 S.Ct. 1464 (emphasis added). The Court added that

> The operation of a double system of conflicting laws in the same State is plainly hostile to the reign of law. *Certainly, the fortuitous circumstance of residence out of a State of one of the parties to a litigation ought not to give rise to a discrimination against others equally concerned but locally resident.* The source of substantive rights enforced by a federal court under diversity jurisdiction, it cannot be said too often, is the law of the States. Whenever that law is authoritatively declared by a State, whether its voice be the legislature or its highest court, such law ought to govern in litigation founded on that law, whether the forum of application is a State or a federal court and whether the remedies be sought at law or may be had in equity.

*Id.* at 112, 65 S.Ct. 1464 (emphasis added).

These principles were applied to an arbitration question in *Bernhardt v. Polygraphic Co. of America,* 350 U.S. 198, 203, 76 S.Ct. 273, 100 L.Ed. 199 (1956), a contract action that raised the question of whether the federal court sitting in diversity was required to apply a Vermont statute that made an agreement to arbitrate revocable at any time before an arbitration award was actually made:

> We deal here with a right to recover that owes its existence to one of the States, not to the United States. The federal court enforces the state-created

right by rules of procedure which it has acquired from the Federal Government and which therefore are not identical with those of the state courts. Yet, in spite of that difference in procedure, the federal court enforcing a state-created right in a diversity case is, as we said in *Guaranty Trust Co. v. York*, 326 U.S. 99, 108, 65 S.Ct. 1464, 89 L.Ed. 2079, in substance "only another court of the State."

*Bernhardt*, 350 U.S. at 202–03, 76 S.Ct. 273. The *Bernhardt* Court held that the State's requirements with respect to arbitration must be honored by the federal court because significant differences between arbitration and court adjudication create a very substantial potential for differences in outcome:

If the federal court allows arbitration where the state court would disallow it, the outcome of litigation might depend on the courthouse where suit is brought. For *the remedy by arbitration, whatever its merits or shortcomings, substantially affects the cause of action created by the State.* The nature of the tribunal where suits are tried is an important part of the parcel of rights behind a cause of action. *The change from a court of law to an arbitration panel may make a radical difference in ultimate result.* Arbitration carries no right to trial by jury. . . . Arbitrators do not have the benefit of judicial instruction on the law; they need not give their reasons for their results; the record of their proceedings is not as complete as it is in a court trial; and judicial review of an award is more limited than judicial review of a trial. . . .

*Bernhardt*, 350 U.S. at 203, 76 S.Ct. 273 (emphases added). In addition,

[w]hether the arbitrators misconstrued a contract is not open to judicial review. . . . Questions of fault or neglect are solely for the arbitrators' consideration. . . . Arbitrators are not bound by the rules of evidence. . . . They may draw on their personal knowledge in making an award. . . . Absent agreement of the parties, a written transcript of the proceedings is unnecessary. . . . Swearing of witnesses may not be required. . . . And the arbitrators need not disclose the facts or reasons behind their award.

*Id.* at 203 n. 4, 76 S.Ct. 273. The Court concluded that "[t]here would in our judgment be a resultant discrimination if the parties suing on a Vermont cause of action in the federal court were remitted to arbitration, while those suing in the Vermont court could not be." *Id.* at 204, 76 S.Ct. 273.

### B. *MSRA*

Section 325E.37 of the Minnesota Sales Representative Act governs, *inter alia*, the termination or nonrenewal of sales representative agreements, "express or implied, whether oral or written," Minn.Stat. § 325E.37 subd. 1(e), between a manufacturer and a sales representative, *i.e.*, "a person who contracts with a principal to solicit wholesale orders and who is compensated, in whole or in part, by commission," *id.* subd. 1(d), if that person is a resident of or maintains his principal place of business in Minnesota, or his geographical sales territory includes all or part of Minnesota, *see id.* subd. 6(a). As a substantive matter, that section provides, *inter alia*, that

(a) A manufacturer . . . may not terminate a sales representative agreement unless the person has good cause and:

(1) that person has given written notice setting forth the reason(s) for the termination at least 90 days in advance of termination; and

(2) the recipient of the notice fails to correct the reasons stated for termination in the notice within 60 days of receipt of the notice.

(b) A notice of termination is effective immediately upon receipt where the alleged grounds for termination are the reasons set forth in subdivision 1, paragraph (b), clauses (1) to (6), hereof.

*Id.* subd. 2. The six clauses referred to provide that good cause includes, but is not limited to, the sales representative's bankruptcy or insolvency; assignment of his assets for the benefit of creditors; voluntary abandonment of the business; conviction of, or a plea of guilty or no-contest to, a charge of violating any law relating to his business; failure to forward customer payments to the manufacturer; and any act that materially impairs the manufacturer's good will. *See id.* subd. 1(b). The Act similarly prohibits the manufacturer from failing to renew a sales representative agreement on less than 90 days' notice, unless there is good cause for nonrenewal. *See id.* subd. 3.

The Act also provides that if a sales representative agreement is terminated, "[p]ayment of commissions due the sales representative shall be paid in accordance with the terms of the sales representative agreement or, if not specified in the agreement, payments of commissions due the sales representative shall be paid in accordance with section 181.145." *Id.* subd. 4. Section 181.145 of the Minnesota statutes, which deals generally with the employment of persons "paid on the basis of commissions for sales," Minn.Stat. § 181.145 subd. 1, requires that a commission salesperson who is terminated be paid his earned commissions promptly, generally within three to ten working days, *see id.* subds. 2(b), (c), (d). Section 181.145 provides that if the manufacturer fails to make payment as promptly as subdivision

2 requires, a monetary penalty will be assessed, *see id.* subd. 3, and attorneys' fees are to be awarded to the sales representative, *see id.* subd. 4.

MSRA provides that a manufacturer claiming violation of any provision of § 325E.37 must do so through arbitration, and that a sales representative seeking resolution of such a dispute has the option of proceeding through either arbitration or court action:

> *The sole remedy for a manufacturer,* wholesaler, assembler, or importer *who alleges a violation of any provision of this section is to submit the matter to arbitration.* A sales representative may also submit a matter to arbitration, or in the alternative, at the sales representative's option prior to the arbitration hearing, the sales representative may bring the sales representative's claims in a court of law, and in that event the claims of all parties must be resolved in that forum. . . . Each party to a sales representative agreement shall be bound by the arbitration.

Minn.Stat. § 325E.37 subd. 5(a) (emphasis added). The arbitrator has the power to grant a variety of monetary and equitable relief, *see id.* subd. 5(b); and subject to a court order of confirmation on motion of any party, "[t]he decision of any arbitration hearing under this subdivision is final and binding on the sales representative and the manufacturer," *id.* subd. 5(c). Thus, MSRA's provisions make it plain that a manufacturer has no right to pursue MSRA claims in court unless the sales representative has chosen the court as a forum, and that the sales representative has the option of insisting on arbitration.

█ We note that this adjudication scheme is consistent with Minnesota's general policy of favoring arbitration of commercial contracts. *Eden Land Corp. v. Minn–Kota Excavating, Inc.,* 302 Minn.

529, 530, 223 N.W.2d 658, 659 (1974) (per curiam) (Minnesota law "has consistently looked on arbitration as a proceeding favored in the law" (internal quotation marks omitted)); *Grover–Dimond Associates v. American Arbitration Association,* 297 Minn. 324, 327, 211 N.W.2d 787, 788 (1973) ("Clearly, it is the policy of this state ... to encourage arbitration as a speedy, informal, and relatively inexpensive procedure for resolving controversies arising out of commercial transactions." (internal quotation marks omitted)). With respect to similar Minnesota statutes, the state's courts have noted that "[e]ven though resort to courts is authorized, the basic intent of [such] act[s] is to discourage litigation and to foster voluntary resolution of disputes." *Har–Mar Inc. v. Thorsen & Thorshov, Inc.,* 300 Minn. 149, 154, 218 N.W.2d 751, 754–55 (1974) (internal quotation marks omitted).

"A State may, of course, distribute the functions of its judicial machinery as it sees fit," *Byrd v. Blue Ridge Rural Elect. Cooperative, Inc.,* 356 U.S. 525, 536, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958). With respect to sales representative agreements, MSRA explicitly gives the sales representative the right to choose arbitration and provides that arbitration is the manufacturer's "sole" remedy, unless the sales representative chooses to proceed in court. The district court in the present case stated that *"[h]ad TKN commenced this action in state court,* ... GTFM would have had the right to remove the matter to federal court," and that "[o]nce in federal court, GTFM would have the right to a jury trial." Opinion at 8 n. 6 (emphasis added). Given that MSRA does not purport to prohibit jury trial in a civil action in either federal or state court when the sales representative has elected to bring his claims in court, we agree with that observation. But the district court's factual premise is purely hypothetical;

and, given the potentially outcome-affecting differences between arbitration and court adjudication discussed in *Bernhardt,* the mere fact that the parties are of diverse citizenship does not give the federal court the power to force TKN to proceed in court on a State-created cause of action as to which the State has given TKN the right to insist on arbitration.

We note also that GTFM concedes that "if both GTFM and TKN were citizens of Minnesota, or if the amount in controversy were less than $75,000, there would be no basis upon which the present action [*sic*— TKN's claims] could be heard by a federal court[, and that i]n such a case," GTFM would have no right to a jury trial, for "the Seventh Amendment would not apply." (GTFM brief on appeal at 9 n. 8.) Thus, for the federal court to compel TKN to pursue its claims against GTFM in court rather than through arbitration would confer on GTFM, by reason of its foreign citizenship, a potentially outcome-affecting right that Minnesota citizens do not have. The Supreme Court has expressly stated that such a "discrimination" is a reason for the federal court, in diversity, to honor, not dishonor, a State's law. *Bernhardt,* 350 U.S. at 204, 76 S.Ct. 273; *Guaranty Trust,* 326 U.S. at 112, 65 S.Ct. 1464.

Finally, we note that the fact that TKN has included a common-law breach-of-contract claim in its Arbitration Complaint provides no basis for either revoking its statutory right to compel arbitration of its MSRA claims or finding a Seventh Amendment violation. The MSRA claims plainly are subject to arbitration. Moreover, it is hardly clear that MSRA does not envision the arbitration of related common-law claims as well. *See* Minn.Stat. § 325E.37 subd. 5(a) ("sales representative may also submit *a matter* to arbitration" (emphasis added).) The question of whether MSRA gives the arbitrator jurisdiction over

TKN's common-law contract claim is a matter of state law. If the arbitrator has no jurisdiction over such claims, and if they are pursued in court, GTFM will enjoy whatever right of jury trial the forum provides.

In sum, the Seventh Amendment, though guaranteeing the right to a jury trial for legal issues in cases tried in federal courts, does not apply to the States. The Minnesota Act gives a sales representative the right to pursue State-created claims against the manufacturer through arbitration. GTFM has no right under the Seventh Amendment to force a sales representative to pursue such claims in court rather than in arbitration.

## CONCLUSION

We have considered all of GTFM's arguments in support of its Seventh Amendment claim and have found them to be without merit. The judgment of the district court is reversed, and the matter is remanded for entry of judgment dismissing the complaint.

SOTOMAYOR, Circuit Judge, concurring:

The district court held that GTFM is entitled to a jury because, in federal court, the right to a jury attaches in suits involving legal rights and remedies. The majority disagrees, reasoning, *inter alia*, that when a federal court sits in diversity, it applies state substantive law and that, under *Erie* and its progeny, arbitration is substantive rather than procedural. My problem with the reasoning of both the district court and the majority is that this action was not brought in federal court. Even more importantly, this action was not brought in *any* court.

The majority seems to accept the mistaken premise which led the district court into a discussion of what might happen in federal court, that, "[h]ad TKN commenced this action in state court, ... GTFM would have had the right to remove the matter to federal court." District court opinion at 8 n. 6. TKN, in fact, commenced this action in arbitration, *not* in court. TKN's decision to arbitrate its MSRA claims eliminated GTFM's right to defend itself in any court, to say nothing of an Article III court that is the gateway to the Seventh Amendment. Because the Minnesota legislature has placed an impenetrable barrier between the arbitration GTFM finds itself in and the court proceedings it wishes that TKN had instead brought, this Seventh Amendment challenge easily fails.

At most, GTFM attempts to repackage under a Seventh Amendment label a more general assault on the authority of a state legislature to assign TKN's claims to a non-judicial forum for resolution by mandatory, binding arbitration. *See* Complaint ¶ 1 ("This action involves the constitutionality of a Minnesota statute which requires a foreign corporation ... to submit to binding arbitration, even though the foreign corporation never agreed to arbitrate."). Challenges of this sort have previously failed under other constitutional theories, and invoking the Seventh Amendment does not change matters. In disposing of one such challenge, the Supreme Court explained:

> The present statute substitutes a determination by arbitration for trial in court.... As appellant's objection to it is directed specifically to the power of the state to substitute the one remedy for the other, rather than to the constitutionality of the particular procedure prescribed or followed before the arbitrators, it suffices to say that the procedure by which rights may be enforced and wrongs remedied is peculiarly a subject of state regulation and control.

The Fourteenth Amendment neither implies that all trials must be by jury, nor guarantees any particular form or method of state procedure. In the exercise of that power and to satisfy a public need, a state may choose the remedy best adapted, in the legislative judgment, to protect the interests concerned, provided its choice is not unreasonable or arbitrary, and the procedure it adopts satisfies the constitutional requirements of reasonable notice and opportunity to be heard.

*Hardware Dealers' Mut. Fire Ins. Co. of Wis. v. Glidden Co.*, 284 U.S. 151, 158, 52 S.Ct. 69, 76 L.Ed. 214 (1931) (citation omitted) (rejecting due process and equal protection challenges to a Minnesota statute).

Instead of deciding this appeal solely along these lines, the majority addresses a situation, different from ours, in which GTFM would find itself in federal court based on diversity of citizenship defending an MSRA action commenced in arbitration. The majority concludes that because *Bernhardt v. Polygraphic Co. of Am.*, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1958), held that arbitration is substantive rather than procedural, a federal court does not have the "power to force TKN to proceed in court on a State-created cause of action as to which the State has given TKN the right to insist on arbitration." *Ante* at 244.

But GTFM has never sought to remove this action from arbitration to federal court, perhaps expecting that such an attempt would fail. *See* 28 U.S.C. § 1441(a) (permitting removal to federal district court from "any civil action brought in a State court"). Even if GTFM had requested removal and had succeeded, the federal courts would more likely find that they have no jurisdiction to hear the claim, rather than broaching the *Erie* question. *See, e.g., Beach v. Owens–Corning Fiberg-*

*las Corp.*, 728 F.2d 407, 409 (7th Cir.1984) ("The Indiana law vesting exclusive jurisdiction over disputes between employees and their employers in the disputes board operates to close state court doors to the plaintiffs. The state's denial of a judicial remedy in this case is a denial of the substantive right asserted by the plaintiffs.... Accordingly, the state courts have no jurisdiction over the plaintiffs' claims, and the plaintiffs therefore have no claim to press in this federal action, which depends entirely upon state law.").

In denying GTFM's Seventh Amendment challenge to the MSRA, I would simply reaffirm that the Minnesota legislature was free to forgo a judicial forum in permitting resolution of TKN's claims through mandatory, binding arbitration. Once in arbitration, GTFM had no constitutional right to a jury.